IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERIK DUDLEY, SR., individually and | § | CV. NO. 5:12-CV-357-DAE |
| as Guardian of E. Dudley Jr., a Minor, | § | |
| XANDRA BUDD, individually and as | § | |
| Guardian of E. Dudley Jr., a Minor, and | § | |
| MARIBETH HUITFELDT, individually | § | |
| and as Guardian of C. Huitfeldt, a Minor | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| BEXAR COUNTY, JUAN GUILLEN, | § | |
| and AMADEO ORTIZ, | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART JUAN
GUILLEN'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING IN
PART AND DENYING IN PART BEXAR COUNTY AND ORTIZ'S MOTION
FOR SUMMARY JUDGMENT

Before the Court are two Motions for Summary Judgment, the first

filed by Defendant Juan Guillen ("Guillen") ("Guillen Mot.," Dkt. # 50) and the

second filed by Bexar County (the "County") and Sheriff Amadeo Ortiz ("Ortiz")

("Bexar Mot.," Dkt. # 52) (collectively, "Defendants").  The Court held a hearing

on both Motions on December 8, 2014.  At the hearing, Edgardo Rafael Baez,,

Rosemarie Alvarado, and Crystal Wright, Esqs., represented Plaintiffs Erik Dudley

Sr., individually and as Guardian of E. Dudley Jr., a minor, Xandra Budd,

individually and as Guardian of E. Dudley Jr., a minor, and Maribeth Huitfeldt,

individually as Guardian of C. Huitfeldt, a minor (collectively, "Plaintiffs"); Susan

A. Bowen, Esq., represented the County and Ortiz; Charles Straith Frigerio and

Hector X. Saenz, Esqs., represented Guillen.  Upon careful consideration of the

arguments asserted in the supporting and opposing memoranda, as well as the

arguments presented at the hearing, the Court **GRANTS IN PART AND DENIES**

**IN PART** Guillen's Motion (Dkt. # 50) and **GRANTS IN PART AND DENIES**

**IN PART** the County and Ortiz's Motion (Dkt. # 52).

<u>BACKGROUND</u>

The present action arises out of a shooting that occurred on the night

of June 14, 2010, at the Encino Canyon Apartments (the "Apartments") in San

Antonio.  (Guillen Mot. at 2; <u>id.</u>, Ex. B at 1.)  Although most of the facts

surrounding the shooting are in dispute, the Court relates Plaintiffs' version of the

facts because the Court must take the facts in the light most favorable to the

Plaintiffs at the summary judgment stage.  <u>See</u> <u>Kevin M. Ehringer Enters., Inc. v.</u>

<u>McData Servs. Corp.</u>, 646 F.3d 321, 326 (5th Cir. 2011).

Sometime between 10:30 p.m. and 11:00 p.m. on the evening of June

14, 2010, Christian Blankinship ("Blankinship") drove in his Volkswagen Golf

GTA with friend and passenger Colin Huitfeldt ("Huitfeldt") to pick-up another

2

friend, Erik Dudley ("Dudley"), at Dudley's residence.  ("Blankinship Dep.," Dkt. # 50, Ex. T–1 at 7:17, 8:17–21, 9:7–13; "Huitfeldt Dep.," Dkt. # 50, Ex. U at 11:4–23.[1])  After picking up Dudley, the three drove for some amount of time and eventually decided to go to the Apartments to "car-hop."[2]  (Blankinship Dep. 10:10–17, 11:11–14; Huitfeldt Dep. 11:24–12:16, 12:21–22.)  Upon arriving at the Apartments, Blankinship, Huitfeldt, and Dudley exited the car and Huitfeldt and Dudley began to "car-hop."  (Blankinship Dep. 13:17–23; Huitfeldt Dep. 14:7–25.)

Because none of the cars were unlocked, the three decided to get back in the car after about ten to fifteen minutes at the Apartments.  (Blankinship Dep. 14:20–25; Huitfeldt Dep. 18:6–8.)  At some point during this time, Guillen received a noise complaint from a tenant at the Apartments, where he worked as a security officer.  ("Guillen Dep.," Dkt. # 50, Ex. T at 9:13–16, 10:21–11:24.)  Guillen is a Bexar County Deputy Sheriff who had performed off-duty security for the Apartments during his time as a tenant there.  ("Guillen Aff.," Guillen Dep., Ex. B at 1.)

In response to the noise compliant, Guillen, equipped with a flashlight

---

[1] Dudley provides no testimony as to the events of that night, as he has no recollection of the incident.  ("Dudley Dep.," Resp., Ex. U–1–3 at 28:20–29:17.)

[2] According to the testimony, to "car-hop" means to burgle cars by pulling car handles to determine whether the cars are unlocked and, if so, taking something from inside the vehicle.  (Blankinship Dep. 11:13–14; Huitfeldt Dep. 12:21–13:4.)

and a gun, moved toward the area where the Plaintiffs were "car-hopping." (Id. at

14:1–19.)  Shortly after getting back in the car, the three boys saw light from

Guillen's flashlight and began to drive toward the exit of the Apartments at a speed

somewhere between ten and fifteen miles per hour.  (Blankinship Dep. 16:22–17:3,

54:7–19; Huitfeldt Dep. 17:15–19:5, 23:20–22.)  As they drove the quarter mile

toward the exit gate, Guillen ran to the outside of the gate.  (Guillen Dep.

15:9–16:3; Blankinship Dep. 18:7–19; Huitfeldt Dep. 24:19–24.)

      Upon arriving at the exit, Blankinship waited for the exit gate to open

outwards, at which point he sped through the gate as fast as possible and drove up

onto the curb.  (Blankinship Dep. 18:25–19:3, 20:12–20; Huitfeldt Dep. 26:21.)

Blankinship and Huitfeldt testify that Blankinship drove sideways through the gate

and landed on the curb so as to avoid hitting Guillen, who was running toward the

vehicle.  (Blankinship Dep. 21:12–20; Huitfeldt Dep. 26:19–27:1.)  Both also attest

that they did not make contact with Guillen, and instead drove past him.[3]

(Blankinship Dep. 20:12–21; Huitfeldt Dep. 27:1–8.)

      Blankinship and Huitfeldt attest that, while Blankinship was reversing

---

[3] Guillen testifies that he was standing in front of the gate when the car was waiting
for the gate to open and the car hit him as it sped out of the Apartments.  (Guillen
Dep. 24:14–17, 26:3–5, 53:12–25.)

off the curb, Guillen began to fire shots at their vehicle.[4]  (Blankinship Dep.

20:22–21:6; Huitfeldt Dep. 28:20–29:4.)  It is undisputed that the shots entered the

car, grazing Huitfeldt's knee cap and hitting Dudley in his spine and brain.

(Huitfeldt Dep. 35:23–36:1; Dudley Dep. 61:3–6; Guillen Mot. at 4.)  Blankinship

and Huifeldt called 911, drove to CVS, which was the nearest business, and called

911 again from CVS.  (Blankinship Dep. 28:10–24; Huitfeldt Dep. 32:10–33:11.)

Ultimately, Dudley survived with significant physical impairments, including

paralysis of his left side, impaired vision, and short-term memory loss.  (Dudley

Dep. 61:3–14, 65:1–7, 69:10–23, 77:14–18.)

On April 18, 2012, Plaintiffs filed a complaint in this Court, naming

the County, Guillen, and Ortiz as Defendants.  Plaintiffs asserted Fourth, Fifth, and

Fourteenth Amendment claims under 42 U.S.C. § 1983 against Defendants,

alleging that they subjected Plaintiffs to physical beatings,[5] unreasonable excessive

force, and great bodily injury and that they interfered with Plaintiffs' rights to seek

redress by covering up law enforcement misconduct and filing false police reports.

---

[4] Guillen testifies that he began to fire as the car was speeding toward him because
he feared death or serious bodily injury from being struck by the vehicle.  (Guillen
Dep. 81:10–24.)  Guillen presents analysis from an expert which concludes that the
location and direction of the bullet holes indicate that he shot at the front of the car
as it was coming toward him at some point during the incident.  (Guillen Mot., Ex.
D at 4.)

[5] The Court orders the phrase "physical beatings" struck from the pleadings, as
there is no evidentiary basis to support such an allegation.

("Compl.," Dkt. # 1 ¶ 31.)  In the alternative, Plaintiffs asserted claims of

negligence against Ortiz and negligent hiring, training, supervision, and

maintenance against the County.  (Id. ¶¶ 21–22.)  Plaintiffs sought a declaratory

judgment that the County's internal affairs procedures and investigations be

declared unconstitutional in violation of the Fourteenth Amendment.  (Id. ¶ 29.)  In

addition, Plaintiffs sought compensatory damages, exemplary damages, and

attorney's fees and costs.  (Id. at 13.)  Plaintiffs filed an Amended Complaint on

April 23, 2012, which reasserted the same causes of action and which requested the

same relief.  (Dkt. # 2.)

   On August 21, 2014, Guillen filed a Motion for Summary Judgment

and on August 22, 2014, the County and Ortiz filed their Motion for Summary

Judgment.  (Dkts. ## 50, 52.)  On September 5, 2014, Plaintiffs filed their

Responses to the Motions.  (Dkts. ## 56, 57.)  On September 15, 2014, the County

and Ortiz filed their Reply.  (Dkt. # 58.)  On November 7, 2014, Guillen filed his

Reply.  (Dkt. # 59.)

<u>LEGAL STANDARD</u>

   A movant is entitled to summary judgment upon showing that "there

is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); <u>see also</u>

<u>Meadaa v. K.A.P. Enters., L.L.C.</u>, 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is

only genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).

 The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986). If the moving party meets this burden, the non-moving party

must come forward with specific facts that establish the existence of a genuine

issue for trial. Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738

F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d

619, 621 (5th Cir. 2000)). "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

 In deciding whether a fact issue has been created, "the court must

draw all reasonable inferences in favor of the non-moving party, and it may not

make credibility determinations or weigh the evidence." Kevin M. Ehringer

Enters., 646 F.3d at 326 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530

U.S. 133, 150 (2000)). However, "[u]nsubstantiated assertions, improbable

inferences, and unsupported speculation are not sufficient to defeat a motion for

summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th

Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

<u>DISCUSSION</u>

I.    <u>Guillen's Motion for Summary Judgment</u>

In his Motion, Guillen contends that (1) the excessive use of force claims against him are barred by a qualified immunity defense, and (2) the false reporting claims against him fail to state a cause of action and should be dismissed. (Guillen Mot. at 7–11.)  Plaintiffs counter that there are contested questions of fact that must be presented to a jury and that, therefore, summary judgment is inappropriate.  (Dkt. # 56 at 4–6.)

A.    <u>Excessive Use of Force Claim</u>

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."  <u>Thompson v. Mercer</u>, 762 F.3d 433, 436–37 (5th Cir. 2014) (internal quotation marks and citations omitted).

Once a defendant has raised the qualified immunity defense, the burden shifts to the plaintiff to show a violation of a clearly established constitutional right.  <u>Harris v. Serpas</u>, 745 F.3d 767, 771 (5th Cir. 2014). Accordingly, "[w]hen a defendant pleads qualified immunity as an affirmative

defense and moves for summary judgment on that basis, a court must decide

(1) whether the facts alleged or shown by the plaintiff made out a violation of a

constitutional right, and (2) whether that right was 'clearly established' at the time

of the defendant's alleged misconduct." Ontiveros v. City of Rosenberg, Tex., 564

F.3d 379, 382 (5th Cir. 2009). "Courts may address these two elements in either

order, and need not proceed to the second where the first is resolved in the

negative." Thompson, 762 F.3d at 437. Because Guillen's argument addresses the

first prong, the Court begins there.

> 1. Whether Guillen Used Excessive Force in Violation of the Fourth Amendment

Guillen contends that there was no constitutional violation because his

actions were not unreasonable, as is required for a finding of excessive force in

violation of the Fourth Amendment. (Guillen Mot. at 11.) In support, he contends

that he made the decision to discharge his weapon as Plaintiffs' vehicle was

accelerating toward him in an attempt to avoid being run over by the vehicle,

which was reasonable as a matter of law in light of the circumstances. (Id. at 3–4.)

Plaintiffs counter that the evidence raises a question of fact as to

whether Guillen was actually in danger when he discharged his weapon, which

precludes the Court from finding that his actions were reasonable as a matter of

law.  (Dkt. # 6.)  In support, Plaintiffs present four major evidentiary showings.[6]

First, Plaintiffs present their own depositions, during which they attest that Guillen

was not in front of the vehicle when he began to discharge his weapon and that

they never hit Guillen with their vehicle.  (Dkt. # 56 at 5.)  Second, Plaintiffs point

to inconsistencies in Guillen's testimony to call his testimony into question—

primarily that, on the night of the incident, Guillen reported no injury or need for

medical attention; the next day, Guillen went to the hospital reporting left knee

pain; and in his interrogatory and deposition responses, Guillen reported a right

thigh injury.  (Id. at 4–5.)  Third, Plaintiffs present photographs of the location of

the bullet casings after the incident, which Plaintiffs argue place Guillen in a

location different from the one Guillen states he was in.  (Id. at 5.)  Finally,

Plaintiffs present photographs of the bullet holes in the vehicle, which they

maintain show that Guillen fired from a standing position, not from a position on

---

[6] Guillen's Reply objects to Plaintiffs' Exhibits P, Q, Q-1, Q-2, and Q-3 because
they lack foundation and lack relevance under Rule 403.  (Dkt. # 59 at 2.)
Plaintiffs present Exhibit P, Facebook Photos and Facebook Page of Guillen, to
argue that Guillen portrays himself as "The Punisher," a vigilante comic book
character, and ostensibly to create a question of fact as to Guillen's version of
events.  The Court agrees with Guillen that the evidence is irrelevant under Federal
Rule of Evidence 403, excludes the evidence, and does not consider Plaintiffs'
corresponding argument.
        Plaintiffs present Exhibits Q, Q-1, Q-2, and Q-3, which are photos of
similar police uniforms, to corroborate Guillen's deposition testimony that a lay
person could have a uniform that looked similar to his officer uniform.  The Court
again agrees with Guillen that the evidence is irrelevant under Federal Rule of
Evidence 403 and excludes the evidence.

the ground.  (Id. at 4.)

At the outset, the Court notes that the probative value of the photographs is limited.  Plaintiffs have presented no expert testimony interpreting the photographs.  The Court is not a ballistics expert and cannot independently determine the import of the location of shell casings in relation to Guillen's alleged location, nor can it determine whether the angle of a bullet hole establishes that Guillen was sitting, was standing, or was somewhere in between.  The Fifth Circuit has made clear that evidence "not based on any discernable training in or use of scientific methodology suited to the reconstruction of the location of a shooter based on the trajectory of the bullet or location of a shell casing" is mere "unsupported conjecture."  Hathaway v. Bazany, 507 F.3d 312, 318 (5th Cir. 2007).  Accordingly, the Court cannot credit the photographic evidence presented by Plaintiffs.

To show excessive force in violation of a constitutional right, plaintiffs "must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  Harris, 745 F.3d at 772 (internal quotation marks omitted) (quoting Ramirez v. Knoulton, 542 F.3d 124, 128 (5th Cir. 2008)).  The use of deadly force to prevent escape of a suspect, "whatever the circumstances," is constitutionally unreasonable unless the suspect poses immediate threat to the officer or others.

Tennessee v. Garner, 471 U.S. 1, 11 (1985); Luna v. Mullenix, 765 F.3d 531, 540–41 (5th Cir. 2014) ("In a case involving the shooting of a suspect, we have stated that the 'core issue' is 'whether the officer reasonably perceived an immediate threat.'").

Accordingly, "[t]he reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Evaluation of reasonableness is judged from the perspective of a reasonable officer at the time of the incident without the benefit of hindsight. Ontiveros, 564 F.3d at 383.

In cases that involve shooting at vehicles, there are two "central" factors in the reasonableness inquiry: (1) "the limited time [the] officer[] ha[s] to respond" to the threat from the vehicle; and (2) "the closeness of the officers to the projected path of the vehicle." Hathaway, 507 F.3d at 321 (internal quotation marks and editing marks omitted) (quoting Waterman v. Batton, 393 F.3d 471, 477, 479 (4th Cir. 2005)). Because "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased," the timing of events is important. See Lytle v. Bexar Cnty.,

Tex., 560 F.3d 404, 413 (5th Cir. 2009).

In Hathaway, the Fifth Circuit upheld a qualified immunity finding for a police officer who fatally shot a driver when the driver accelerated toward the officer, leaving the officer no opportunity to move from the vehicle's path.  507 F.3d at 315–16.  In its analysis, the court noted that the officer had an "extremely brief period of time" to respond to the threat, given his close proximity to the vehicle.  Id. at 322.  Accordingly, the court found that the use of deadly force was reasonable, even though the officer may have fired when or immediately after he was hit.  Id.

The court subsequently denied qualified immunity to a police officer who fatally shot a driver when the plaintiff presented evidence that the driver was fleeing from the scene at the time the shots were fired.  Lytle, 560 F.3d at 412–13. The court found that, although the car may have posed an immediate and significant threat of harm to the officer when it was reversing in his direction, by the time he shot at the vehicle, the vehicle was no longer a threat.  Id. at 413.  The court noted that, taking all facts in the light most favorable to the plaintiff, the car was three to four houses down the block from the officer before he began shooting at the vehicle.  Id. at 414.  Distinguishing the facts from those in Hathaway, the court emphasized that the threat to the officer—the car in reverse—and the shooting "were not 'in near contemporaneity'" and therefore the court had to infer

13

that sufficient time could have passed for the officer to perceive that the threat to him had ceased.  Id.

According to Plaintiffs, Guillen did not begin to shoot at their vehicle until they had already exited the gate of the Apartments and began to reverse off of the curb.  They present evidence that Guillen never stood in front of their vehicle in front of the gate, that they never hit Guillen as they departed the complex, that at all times they were at least five or six feet away from Guillen, and that they moved at a speed between 10 and 30 miles per hour until they departed from the scene.  However, they present no evidence as to whether Guillen was behind them as they were moving in reverse, nor do they present evidence about the distance Guillen was from the vehicle or the amount of time they spent in reverse before fleeing the scene.[7]

As the Fifth Circuit has described:

> [W]hen facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably, we can hold that an officer acted reasonably as a matter of law.  But when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences, our analysis is more tentative.  In these cases, we must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff.

---

[7] Guillen presents conflicting testimony that, although he does not recall the exact moment he began discharging his weapon, his decision to fire began when he was struck by the vehicle as it exited from the gate.  (Guillen Mot., Ex. B at 2.)

Lytle, 560 F.3d at 412.

Here, there are significant factual disputes about the manner in which the incident took place.  If the facts are as Guillen alleged them—that Plaintiffs drove straight at him when the gate opened, ultimately hitting his leg—Guillen's fear of serious bodily harm was reasonable.  However, at the summary stage, the Court must draw all inferences in favor of Plaintiffs' version of facts, which could allow a reasonable jury to conclude that Guillen shot at the vehicle in an attempt to prevent Plaintiffs from fleeing, not in response to a serious threat of bodily harm.  Accordingly, the Court cannot conclude that, as a matter of law, Guillen's use of force was reasonable.

Guillen argues that Hathaway is controlling here.  Despite some similarities between the events in Hathaway and the events here, Hathaway is distinguishable from the present case.  In Hathaway, the facts considered by the court showed that vehicle was accelerating toward the officer throughout the incident, including at the point that he discharged his weapon.  507 F.3d at 315–16.  The facts here—viewed in the light most favorable to Plaintiffs—show that Plaintiffs were attempting to drive away from Guillen at the time he began shooting.  The Court finds that the present case is closer in facts to Lytle than it is to Hathaway.

Accordingly, the Court finds that there is a material question of fact as

15

to whether Guillen's use of force was reasonable given the circumstances.

Because "a factfinder <u>could</u> conclude that [Guillen] violated the constitution, we

must move on to the qualified immunity question."  <u>See Lytle</u>, 560 F.3d at 412.

2.    <u>Whether The Right Was Clearly Established</u>[8]

Under the second prong of the qualified immunity analysis, the Court

must determine whether the right was clearly established at the time the violation

occurred.  <u>Ontiveros</u>, 564 F.3d at 382.  "The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."

<u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001), <u>overruled on other grounds by</u> <u>Pearson</u>

<u>v. Callahan</u>, 555 U.S. 223 (2009).

In <u>Lytle</u>, the Fifth Circuit held that

> [i]t has long been clearly established that, absent any other
> justification for the use of force, it is unreasonable for a police officer
> to use deadly force against a fleeing felon who does not pose a
> sufficient threat of harm to the officer or others.  This holds as both a
> general matter, and in the more specific context of shooting a suspect
> fleeing in a motor vehicle.

560 F.3d at 417–18 (citations omitted).  Viewing the facts in the light most

favorable to Plaintiffs, it was clearly established that Guillen could not discharge

---

[8] Although neither party addresses this issue in their papers, the Court must address
the question because Defendant has raised the defense of qualified immunity.
<u>Harris</u>, 745 F.3d at 771.

his weapon at Plaintiffs' vehicle absent an objectively reasonable, serious threat of bodily harm.  Accordingly, if a jury were "to accept [Plaintiffs'] version of the facts, it could conclude that [Guillen] had violated [Plaintiffs'] clearly established constitutional right to be free from an unreasonable seizure."  See id. at 418. Accordingly, the Court **DENIES** Guillen's Motion for Summary Judgment, to the extent it argues a qualified immunity defense bars Plaintiffs' excessive use of force claims.

> B.   False Reporting Claim

Second, Guillen argues that the Court should dismiss the § 1983 action based on false police reporting because Plaintiffs have failed to allege any evidence of false reporting.  (Guillen Mot. at 11–12.)

Although the Fifth Circuit has not definitively ruled on the issue,[9] the First and Seventh Circuits have held that the filing of a false police report does not give rise to a § 1983 action unless the false report results in some constitutional injury, such as a deprivation of life, liberty, or property.  Landrigan v. City of Warwick, 628 F.2d 736, 745 (1st Cir. 1980); Whitlock v. Brueggemann, 682 F.3d 567, 582 (7th Cir. 2012); see also Brown v. Miller, 519 F.3d 231, 237 (5th Cir. 2008) (noting that there is a due process violation when the government obtains a

---

[9] The Court notes that the Fifth Circuit stated that "there is no right to a completely accurate police report" in a 2004 unpublished decision.  Smith v. Patri, 99 F. App'x 497, 498 (5th Cir. 2004).

conviction with evidence it knows is false, including a false police report); Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000) ("[t]he manufacture of false evidence, 'in and of itself,' . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right").

District courts within the Fifth Circuit and throughout the country have adopted the reasoning of the First and Seventh Circuits. E.g., Donley v. Ordeneaux, No. 09-6422, 2010 WL 235024, at *2 (E.D. La. Jan. 14, 2010) (dismissing plaintiff's false report claim because he made no allegations that the false report resulted in his arrest or the deprivation of his life, liberty, or property); Ballard v. Hedwig Vill. Police Dep't, No. H-08-0567, 2009 WL 2900737, at *4 (S.D. Tex. Sept. 2, 2009) (finding that plaintiff's § 1983 claims for falsification of police reports failed in part because there were no allegations that the reports resulted in the plaintiff's false conviction); see also Correia v. Town of Framingham, 969 F. Supp. 2d 89, 98 (D. Mass. 2013); Edwards v. Zeese, No. 1:13-CV-29 (WLS), 2013 WL 1833271, at *3 (M.D. Ga. May 1, 2013); Ratliff v. Kaminsky, No. CV 11-2202-PHX-DGC (MHB), 2012 WL 273715 (D. Ariz. Jan. 31, 2012); Bell v. Johnson, No. 7:09-cv-214, 2011 WL 1226003, at *10 (W.D. Va. Mar. 30, 2011); Lawrence v. City of St. Paul, 740 F. Supp. 2d 1026, 1038–39 (D. Minn. 2010); Bush v. City of Phila., No. Civ. A 98-0994, 1999 WL 554585, at *4 (E.D. Pa. July 15, 1999); White v. Tamlyn, 961 F. Supp. 1047, 1056 (E.D. Mich.

1997); <u>Comfort v. Town of Pittsfield</u>, 924 F. Supp. 1219, 1230 (D. Me. 1996).

Plaintiffs have identified no constitutional harm, nor presented any evidence, that they have suffered as a result of the allegedly false police report.[10] Accordingly, there is no genuine issue of fact as to this claim, and the Court **GRANTS** Guillen's Motion on this basis.

II.     <u>The County and Ortiz's Motion for Summary Judgment</u>

In their Motion, the County and Ortiz contend that summary judgment is proper because (1) the constitutional claims made against Ortiz in his individual capacity are barred by a qualified immunity defense; (2) Plaintiffs' injuries were not caused by a policy or practice of Bexar County; and (3) Plaintiffs' request for declaratory judgment is premised on a Fourteenth Amendment claim and Plaintiffs fail to show that they were deprived of life, liberty, or property by a false investigation.  (Bexar Mot. at 4–16.)  Plaintiffs counter that, because the County's policy, adopted by Ortiz, was ambiguous and allowed Guillen to "place himself in danger" in order to use deadly force, there is a genuine issue of material fact as to whether Plaintiffs' injuries were caused by a Bexar County policy.  (Dkt. # 27 at 2–3.)

---

[10] The Court notes that the driver of the vehicle, who was criminally prosecuted, is not a party to this suit and therefore any deprivation of liberty he may have experienced from the alleged falsification is irrelevant here.

A.      Qualified Immunity for Ortiz in His Individual Capacity

The County and Ortiz argue that "Ortiz is entitled to qualified immunity in his individual capacity."  (Bexar Mot. at 5.)  However, Plaintiffs have alleged no cause of action against Ortiz in his individual capacity.  (See Dkt. # 2 ¶ 5 ("Guillen is sued individually and the remaining Defendants are sued in their official capacities.").)  Qualified immunity only bars liability for claims against county officials in their individual—not official—capacities.  Sanders-Burns v. City of Plano, 594 F.3d 366, 378 (5th Cir. 2010).  Accordingly, the Court **DENIES** the County and Ortiz's Motion, to the extent that it argues that a qualified immunity defense is applicable to Ortiz in this case.

B.      Policy and Practice Claim

Next, the County and Ortiz argue that (1) there was no constitutional violation, as argued in Guillen's Motion for Summary Judgment; and (2) even if there was a constitutional violation, Ortiz did not promulgate or adopt a policy that was the moving force behind the deprivation.  (Bexar Mot. at 6–14.)  Plaintiffs counter that a genuine issue of material fact exists as to whether the County should have promulgated a policy that prevents officers from placing themselves in danger, given their knowledge that Guillen acted as a "vigilante capable of doing self-inflicting injury acts."  (Dkt. # 57 at 2–3.)

A local government is liable under § 1983 for constitutional violations

20

arising out of policies or practices officially adopted and promulgated by the government's officers.  City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Because local governments cannot incur § 1983 liability under a respondeat superior theory, they are only liable "for acts directly attributable . . . 'through some official action or imprimatur.'"  Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847–48 (5th Cir. 2009) (quoting Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001)).

   To establish municipal liability under § 1983, a plaintiff must prove that (1) a policy maker promulgated (2) an official policy or custom that (3) was the moving force behind the violation of the plaintiff's constitutional rights. Monell, 436 U.S. at 694; accord Zarnow v. City of Witchita Falls, Tex., 614 F.3d 161, 166 (5th Cir. 2010).

   1. Lack of Constitutional Violation

   The County and Ortiz first argue there was no constitutional violation by incorporating and invoking the arguments contained within Guillen's Motion for Summary Judgment.  (Bexar Mot. at 6.)  Because the Court has concluded that, for summary judgment purposes, there is a genuine issue of material fact as to whether a constitutional violation occurred, the Court rejects this argument.

2.    Policy or Practice

Second, the County and Ortiz argue that Plaintiffs have failed to identify a written policy that caused a constitutional violation, and Plaintiffs have presented no evidence to show that the County was deliberately indifferent in failing to adopt a policy that "Deputies should not place themselves in danger." Additionally, they argue that there was no policy amounting to a failure to adequately train or supervise.

A policy or custom is either (1) a written policy statement, ordinance, or regulation officially promulgated by county officials, or (2) a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." Peterson, 588 F.3d at 847 (quoting Piotrowski, 237 F.3d at 578). The Court analyzes Plaintiffs' arguments under the applicable prongs.

a.    Written Policy Statement

The County and Ortiz first argue that Plaintiffs fail to present the requisite proof of the "official policy" element of municipal liability because Plaintiffs have failed to identify the particular policy at issue and because Plaintiffs have no evidence that the County was deliberately indifferent in failing to adopt a policy prohibiting officers from placing themselves in danger. (Bexar Mot. at 6–8.)

22

If a policy does not violate federal law or authorize the deprivation of federal rights on its face, a plaintiff must show that the policy was adopted or maintained with deliberate indifference "to its known or obvious consequences." Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 309 (5th Cir. 2004).  To show deliberate indifference, a plaintiff must usually demonstrate "at least a pattern of similar violations."  Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003).

Although Plaintiffs do not specifically identify the policy at issue in their Amended Complaint, Plaintiffs attach Bexar County's Weapons Discharge and Excessive Force Policy to their Response to the Motion for Summary Judgment.  (Dkt. # 57, Ex. A.)  The policy expressly prohibits the discharge of a weapon "to effect an arrest or prevent an escape, unless immediately necessary to protect the officer or another from death or serious bodily injury."  (Id. at 2.) Plaintiffs have not identified—and the Court has not independently located—any provisions of the written policy that facially violate federal law or authorize the deprivation of federal rights.

Accordingly, to meet their burden, Plaintiffs must show that the policy was adopted or maintained with deliberate indifference to its known or obvious consequences.  Plaintiffs posit that the policy was maintained with deliberate indifference because it does not prevent officers from placing themselves in danger

23

to circumvent the weapons discharge and deadly force provisions, nor does it require officers involved in shootings to undergo a blood alcohol level test after the incident.  (Dkt. # 57 at 3.)

Plaintiffs' allegation is insufficient to meet the deliberate indifference standard.  Plaintiffs point to no evidence of similar incidents resulting from the policy that show that the constitutional deprivation would be obviously likely to result in a constitutional violation.  See Burge, 336 U.S. at 370.  The cursory allegation, unsupported by any evidence, that "[m]ore and more Deputies get involved in this type of behavior" because of the way the policy is written is wholly insufficient to meet Plaintiffs' burden.  Accordingly, the Court finds no written official policy that can support Plaintiffs' claims against the County.

b.      Official Practice or Custom

A plaintiff can also hold a county liable for an official practice or custom that violated his constitutional rights using a failure to train or supervise theory.  Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005).  To do so, a plaintiff must show that the county is responsible for failing to provide proper training or supervision due to deliberate indifference, and that failure actually caused the plaintiff's injury.  Id.  In the context of police encounters, the failure must be a result of the county's deliberate indifference to the rights of those with whom the police come into contact.  Brown v. Bryan Cnty., Okla., 219 F.3d 450,

459 (5th Cir. 2000).  A plaintiff can prove deliberate indifference by showing that

the inadequacy of training or supervision is "obvious and likely to result in a

constitutional violation."  Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003).

Although failure to train and supervise typically require evidence of a

pattern of similar violations, "under certain circumstances, § 1983 liability can

attach for a single decision not to train an individual officer even where there has

been no pattern of previous constitutional violations."  Sanders-Burns, 594 F.3d at

381; Brown, 219 F.3d at 459.  "[W]ith respect to specific officers, a need for more

or different training can be so obvious and the inadequacy of training so likely to

result in a violation of constitutional right that the [county] can reasonably be said

to have been deliberately indifferent to the need for training."  Id.

"For liability to attach based on an 'inadequate training' claim, a

plaintiff must allege with specificity how a particular training program is

defective."  Roberts, 397 F.3d at 293.  Here, Plaintiffs argue that the County was

deliberately indifferent in failing to properly train Guillen not to place himself in

dangerous situations that require the use of deadly force because the County should

have known that Guillen perceived himself as a vigilante.  (Dkt # 57 at 3.)

However, the County and Ortiz have presented substantial evidence

that Guillen received adequate training in the use of deadly force.  In order to serve

as law enforcement personnel in Bexar County, an officer must hold a peace

officer license, the requirements of which are dictated by the Texas Legislature and Texas Commission on Law Enforcement ("TCOLE").  (Bexar Mot., Ex. 1 ¶ 6.) During training required for licensing, officers participate in use of force training. (Id. ¶ 8.)  Upon licensing, an officer must also participate in mandatory continuing education courses through TCOLE.  (Id.)  Guillen received his license in January 2007, pursuant to which he participated in a training on use of force and force options.  (Bexar Mot., Ex. 1, Exs. B, D.)  In addition, he participated in a separate, 16-hour course on intermediate use of force, which he completed in December 2006.  (Bexar Mot., Ex. 1, Ex. D.)  The intermediate use of force training curriculum included learning objectives on avoidable shootings, the risks of shots at a motor vehicle, the "fleeing felon" rule, and the factors courts use to assess reasonableness of force.  (Bexar Mot., Ex. 1, Ex. C.)

There is no evidence to suggest that Guillen's training in particular was so inadequate that the county was deliberately indifferent to the "highly predictable consequence" of a violation of constitutional rights.  See Canton, 489 U.S. at 390 n.10  (noting that it would be deliberately indifferent to fail to train officers about constitutional limits on use of deadly force because of the high likelihood that an officer would need to capture a fleeing felon).  Nor have Plaintiffs presented any evidence of a pattern of violations that would have put the County on notice that their use of force training was insufficient in preventing

constitutional injury.  See Rios v. City of Del Rio, Tex., 444 F.3d 417, 427 (5th Cir. 2006).  Accordingly, a reasonable jury could not conclude that the County is liable under § 1983 for failure to train.

Similarly, the County and Ortiz have also presented evidence that Guillen was subject to appropriate supervision.  All officers are subject to discipline for failure to follow the rules and procedures of the County's Sheriff's Office, including the use of force policy.  (Bexar Mot., Ex. 2 ¶ 5.)  Plaintiffs have presented no evidence supporting their allegations of inappropriate supervision, except to suggest that the mere fact that this incident occurred proves there was inadequate supervision.  This is insufficient.  The County is not liable under § 1983 for the tortious acts of its employees.  Without any evidence showing the County's deliberate indifference, a reasonable jury could not conclude that the County is liable under § 1983 for a failure to supervise.

"In virtually every instance where a person has had his or her constitutional rights violated by a [county] employee, a § 1983 plaintiff will be able to point to something the [county] 'could have done' to prevent the unfortunate incident."  Canton, 489 U.S. at 392.  However, merely pointing to something that the County could have done is insufficient to give rise to § 1983 liability; a plaintiff must show that the County was deliberately indifferent.  Plaintiffs have not met their burden in making such a showing.  Accordingly,

**GRANTS** the County and Ortiz's Motion for Summary Judgment regarding Plaintiffs' § 1983 claims.

    C.    <u>Declaratory Judgment</u>

    Finally, the County and Ortiz argue that the Court should deny Plaintiffs' request for a declaratory judgment that the County's internal affairs procedures and investigations are unconstitutional because there is no evidence that Plaintiffs were or will be deprived of life, liberty, or property by an improper investigation.  (Bexar Mot. at 15–16.)

    Federal courts have jurisdiction only to resolve an actual case or controversy.  U.S. Const. art. III, § 2, cl. 1; <u>City of L.A. v. Lyons</u>, 461 U.S. 95, 100 (1983).  Like in any federal case, a party requesting equitable relief must have standing to seek that relief.  <u>K.P. v. LeBlanc</u>, 627 F.3d 115, 122 (5th Cir. 2010).  Accordingly, a party seeking a declaratory judgment must show an injury-in-fact caused by a defendant's conduct that is redressable by a court.  <u>Id.</u>

    "An injury sufficient to confer standing is both 'concrete and particularized' and 'actual or imminent.'"  <u>Id.</u>  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding [equitable] relief if unaccompanied by any continuing, present adverse effects."  <u>Lyons</u>, 461 U.S. at 102 (internal quotation marks and editing marks omitted).

    Plaintiffs have not shown an actual or imminent injury arising out of

false police reports in violation of the Fourteenth Amendment.  As the Court has already discussed, Plaintiffs have identified no constitutional harm, nor presented any evidence, that they have suffered injury as a result of the allegedly false police report.  Without any evidence to this effect, there is no actual case or controversy that would permit the Court to issue a declaratory judgment regarding the County's internal affairs procedures and investigations.  Accordingly, the Court **GRANTS** the County and Ortiz's Motion for Summary Judgment regarding the declaratory judgment claim.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Guillen's Motion for Summary Judgment (Dkt. # 50).  Accordingly, the claims against Guillen for excessive use of force remain; the claims against Guillen for falsification of records are dismissed.  Additionally, the Court **GRANTS IN PART AND DENIES IN PART** Ortiz and the County's Motion for Summary Judgment (Dkt. # 52).  Because the County did not move for summary judgment on the state law claims of negligence against Ortiz and negligent hiring, training, supervision, and maintenance claims against the County, those claims remain.  The constitutional claims brought under § 1983 against Ortiz and the County and Plaintiffs' request for declaratory relief are hereby dismissed.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, December 9, 2014.

David Alan Ezra
Senior United States Distict Judge